**NOT FOR PUBLICATION**

<u>**UNITED STATES DISTRICT COURT**</u>
<u>**DISTRICT OF NEW JERSEY**</u>

|  |  |
|---|---|
| THOMAS A. IANACCI,  :  <br> : <br> Plaintiff   : <br> : <br> v.    : <br> : <br> BRENDA MINARI, et al.  : <br> : <br> Defendants  : <br> : | Civil No. 05-1655 (JBS) <br><br> **O P I N I O N** |

  THOMAS A. IANACCI, #2898/790716A, Plaintiff <u>Pro</u> <u>Se</u>
  Adult Diagnostic and Treatment Center
  8 Production Way
  Avenel, New Jersey 07001

<u>**SIMANDLE, DISTRICT JUDGE**</u>

   Plaintiff Thomas A. Iannaci ("Ianacci"), a prisoner who is confined at the Adult Diagnostic and Treatment Center in Avenel, New Jersey ("ADTC"), seeks to bring this action <u>in</u> <u>forma</u> <u>pauperis</u> pursuant to 28 U.S.C. § 1915 (1998). This Court will (1) permit this action to proceed <u>in</u> <u>forma</u> <u>pauperis</u>; (2) direct the Clerk of the Court to file the Complaint without pre-payment of the filing fee; (3) assess the $250.00 filing fee against Plaintiff; and (4) direct the head of the ADTC to forward payments from Plaintiff's institutional account to the Clerk of the Court each month the

amount in the account exceeds $10.00, until the $250.00 filing fee is paid in full, regardless of the outcome of the litigation. See 28 U.S.C. §1915(a), (b)(1), (b)(2), (b)(4).

Pursuant to 28 U.S.C. § 1915(e)(2), the Court has reviewed the Complaint to identify cognizable claims.  The Court will dismiss the Complaint pursuant to 28 U.S.C. § 1915 (e)(2)(B)(ii) and (iii) and 1915A (B)(1) and (2).

## I. BACKGROUND

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 seeking damages for alleged violations of his rights secured by the Constitution and laws of the United States.[1]  The Defendants are Brenda Minari, Esq., of the Burlington County Prosecutor's Office ("BCPO"); Detectives Fred D'Ascentis and William McGovern of the BCPO; and Detective Campbell of the New Jersey State Police.  (Compl., Caption and ¶¶ 4-5.)

---

[1] 42 U.S.C. § 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Plaintiff asserts the following facts:

> On the night of 6/19/1996, I was called to the B.C.P.O. for a job interview, but I was really being called in to be charged with having sex with my step-daughter. At approximately 5:10 P.M. I was placed in an office and told to fill out the application, and if I needed to use the phone to feel free to use it.  At 5:15 my beeper went off and it was my step-daughter and since I left them about six weeks before, I thought that it was strange but called her back at 5:16 P.M. anyway.
>
> The conversation was very strange.  She was trying to get me to admit to having sex with her.  I asked her what her mother was up to this time.  I told her that I was coming home to find out what was going on now. This phone call ended at 5:21 and when I came out of the office Det. D'Ascentis told me that I could not leave, that he had to get his Sgt.  A few minutes later, he returned with his Sgt. and I was tak[en] to an interview room and told that my step-daughter told them that I had sex with her.
>
> As soon as we got into this room, this detective told me to sign my rights card and then he signed it which was 5:30 P.M.  There was also Det. Campbell from the State Police taking notes for them but not saying anything at all to me.
>
> At this point, he tells me that if I want to go home tonight I will have to give him a confession about me and Ashley.  I told him that I wanted a lawyer.  He told me you know that you can't find a lawyer this time of night, you will see one tomorrow.  He then takes out a black mini tape recorder and said let's take some background information for the record.  We went on for about an hour talking and all during this time he is turning the tape record on and off while we spoke.  I realized that there would be no way in which he would be able to use this tape in court with him stopping it so many times, but obviously Det. D'Ascentis was banking on me thinking this way.
>
> After a while, he convinced me that I was not getting a phone call, and I was not getting out until I gave him a statement.  He then told me that he would tell me what Ashley said happened and all that I had to do was put it into my own words for him, and he would release

3

me ROR that night so that I could get a lawyer. So we rehearsed what he told me to say and did the statement. During both statements he left the room telling me that he had to let his boss hear the tape. And each time returned saying that "she" needed more specific [sic]; there was much that I would not agree to say and during both tapes I kept saying on tape "that I was only doing this to get out of going to jail that night." This of course never showed up anywhere on the statement, but of course the statement when giv[en] to my lawyer was on a "standard size tape" and not the mini tape that he really took the statement on.

You must keep in mind that there was 2 statements taken that night. The first was 7 minutes long and started at 6:20 P.M. Det. D'Ascentis testified that after the phone call ended at 5:21 he took background information for about 30 minutes before reading me my rights. But as you can see from the time of the phone call until he signed my rights card that it was only 7 minutes. And you will see that he admitted to the court that he did not read my rights, that he handed me the card.

The second tape was 15 minutes long and started at 8:25 P.M. Now he also testified that I gave my statement freely. If this is to be believed that I gave it freely, what do you think we were doing in this interview room for [4] hours [if] we were not rehearsing as I have stated. And why didn't I take the deal that was offered to me?

Please also keep in mind that Det. D'Ascentis testified that his office does not use [mini] tape recorders. Yet on his own evidence log that night he put into evidence a mini tape and labeled it as the phone call between myself and Ashley, so this evidence log shows two tapes of the same conversation.

There should be no doubt that he also taped this phone call from the office that he placed me in to get a jump on the interview, on a mini tape recorder, the very [same] one that he used to take my so-called statement on. Which once again shows that he was caught in another lie to the court and the jury, and no one want[s] to do anything about it except to cover it up and let me do the time for him falsifying evidence. [Compl., ¶ 8.]

Plaintiff concludes that all four Defendants are guilty of obstruction of justice, falsifying evidence, false swearing, conspiracy, and conduct unbecoming a public official. (Compl., ¶ 5(c).) He seeks a "fair trial...being able to say everything that needs to be said;" that the B.C.P.C. pay for his "7 long years in this phony therapy center...;" for "the public to know exactly what 'really' goes on here at ADTC with tax payers money," and to prevent the Defendants from doing injustice to others. (Compl., ¶ 9.)

## II. DISCUSSION

The Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66, 1321-77 (1996), requires the Court, prior to docketing or as soon as practicable after docketing, to review a complaint in a civil action in which a prisoner seeks redress against a governmental entity or employee. 28 U.S.C. § 1915A. The Act requires the Court to identify cognizable claims and to dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a Defendant who is immune from such relief. Id.

A. Standard for Dismissal

Rule 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled

to relief." Fed. R. Civ. P. 8 (a) (2); accord Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168 (1993).  Plaintiff is "required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 340 (2d ed. 1990).  The Court "must determine whether, under any reasonable reading of the pleadings, the plaintiff[] may be entitled to relief, and . . . must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom."  Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) (citing Holder v. Allentown, 987 F.2d 188, 194 (3d Cir. 1993)); Eli Lily & Co. v. Roussel Corp., 23 F. Supp.2d 460, 474 (D.N.J. 1998) (citing Nami and Holder).

A pro se complaint is held to less stringent standards than formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972); Then v. I.N.S., 58 F. Supp.2d 422, 429 (D.N.J. 1999), aff'd sub nom. Then v. Quarantino, 208 F.3d 206 (3d Cir. 2000).  "Under our liberal pleading rules, during the initial stage of litigation, a district court should construe all allegations in a complaint in favor of the complainant" and give "credit to the allegations of

6

the complaint as they appear[] in the complaint." Gibbs v. Roman, 116 F.3d 83, 86 (3d Cir. 1997); see also Kulwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir. 1992). But a court need not credit a complaint's "bald assertions" or "legal conclusions" when deciding whether dismissal is appropriate. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997); see also Fernandez-Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284 (5th Cir.1993) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."). "When it appears beyond doubt that no relief could be granted under any set of facts which could be proved consistent with the allegations of the complaint, a dismissal pursuant to Rule 12(b)(6) is proper." Robinson v. Fauver, 932 F. Supp. 639, 642 (D.N.J. 1996)(citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

The Court will construe the Complaint as raising claims of presentation of false testimony and evidence in court by Defendants, conspiracy, and violations of state law. To establish such claims under 42 U.S.C. § 1983, Plaintiff must demonstrate that the challenged conduct was committed by persons acting under color of state law and that the conduct deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled in part on other grounds by Daniels v.

Williams, 474 U.S. 327 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Plaintiff also must assert and prove some causal connection between a Defendant and the alleged wrongdoing in order to recover against that Defendant. See Mt. Healthy, 429 U.S. at 287; Lee-Patterson, 957 F. Supp. at 1401-02. Liability under § 1983 cannot be predicated solely on the operation of respondeat superior. Rode v.Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing Parratt, 451 U.S. at 537 n.3). The Court will now analyze Plaintiff's claims to determine whether dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B) is warranted.

B. Defendant Minari

The Court notes that claims against Defendant Minari fail because a prosecutor is absolutely immune from a damage action under § 1983 for initiating and pursuing a prosecution. Kalina v. Fletcher, 522 U.S. 118, 123 (1997); Imbler v. Pachtman, 424 U.S. 409, 410, 431 (1976) (prosecutor enjoys absolute immunity "in initiating a prosecution and presenting the State's case" even if prosecutor knowingly submitted false evidence at trial); Michaels v. New Jersey, 50 F. Supp.2d 353, 359 (D.N.J. 1999), aff'd, 222 F.3d 118 (3d Cir. 2000), cert. denied, 531 U.S. 1118 (2001) (citing Imbler). See also House v. Belford, 956 F.2d 711,

720 (7th Cir. 1992) (prosecutor absolutely immune from claim of conspiracy to present false testimony to court).

C.  False Testimony and Evidence at Trial

Defendant's claims against the remaining Defendants are barred by the United States Supreme Court decision in Briscoe v. LaHue, 460 U.S. 325, 330 (1983) (police officer who allegedly had given perjured testimony at the defendant's trial was absolutely immune from liability under § 1983); See also Williams v. Hepting, 844 F.2d 138 (3d Cir.), cert. denied, 488 U.S. 851 (1988); Gatter v. Zappile, 54 F.Supp.2d 454 (E.D.Pa. 1999), aff'd, 225 F.3d 648 (3d Cir. 2000) (defendant officers were immune from liability on claim of perjured testimony).  The Court will, therefore, dismiss all claims against these Defendants because they are absolutely immune from liability under 42 U.S.C. § 1983.

Moreover, to the extent that the Complaint alleges the existence of a conspiracy on the part of all Defendants to violate Plaintiff's constitutional rights, this claim is barred by the decision of the United States Supreme Court in Heck v. Humphrey, 512 U.S. 477 (1994).

In Heck, the Supreme Court held that if a judgment in favor of a plaintiff in a § 1983 suit would necessarily imply the invalidity of his conviction or sentence, the complaint must be

dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.  Id. at 487.  See also Rashid v. Monteverde & Hemphill, 1997 WL 360922, *7 (E.D.Pa. June 24, 1997), aff'd, 149 F.3d 1165 (3d Cir. 1998)(§ 1983 claim that public defender conspired with federal agents during course of Plaintiff's criminal trial to deprive him of constitutional rights barred by Heck); St. Germain v. Isenhower, 98 F. Supp.2d 1366, 1372 (S.D.Fla. 2000); Smith v. Coyne, 984 F.Supp. 1186, 1188 (N.D.Ill. 1998) (§ 1983 claim of an unconstitutional conspiracy among defendants to deprive Plaintiff of due process implied the invalidity of his conviction and was barred by Heck).  The Court will also dismiss this claim.

D. Violations of New Jersey Law

The Complaint also appears to allege that the actions of the Defendants violated New Jersey law.  Violation of state law does not state a claim under 42 U.S.C. § 1983.  Elkin v. Fauver, 969 F.2d 48, 52 (3d Cir.), cert. denied, 506 U.S. 977 (1992); Green v. Patterson, 971 F. Supp. 891, 903 (D.N.J. 1997) (citing Elkin).  The Court will dismiss this claim  pursuant to 28 U.S.C. §§ 1915 (e) (2) (B) (ii) and 1915A (b) (1) for failure to state a claim upon which relief may be granted.

### III. CONCLUSION

Based on the foregoing, the Court will grant Plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915, and will dismiss the Complaint as against all Defendants pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and (iii) and 1915A(b)(1)and (2).  The Complaint fails to state a cognizable claim under 42 U.S.C.§ 1983, and the Defendants are absolutely immune from liability.

An appropriate Order accompanies this Opinion.

                                        **s/ Jerome B. Simandle**
                                                **JEROME B. SIMANDLE**
                                     **UNITED STATES DISTRICT JUDGE**

**DATED:  September 21, 2005**